THE PEOPLE *on rel.* McSPEDON *a.* HAWS.

*Supreme Court, First District; Special Term, January,* 1861.

MANDAMUS.—JUDICIAL DETERMINATION.—CONSTITUTIONAL LAW.

The act of 1860 (*Laws of* 1860, 1024, ch. 509, § 6) provided that the supervisors of the city and county of New York should raise a sum to pay whatever sum within a certain amount should be found due to certain contractors, and author-

ized the comptroller to pay the amount when the same should be judicially determined.

*Held*, 1. That the statute did not require that the claimants should obtain a judicial determination by action, as a preliminary before proceeding by mandamus, but that on their application for a mandamus against the comptroller, the court might order a reference to determine the amount.

2. That in such proceeding it was not necessary or proper to pass upon the constitutionality of the statute.

Although a statute under which public expenses are incurred may be unconstitutional, a tax may properly be levied to meet those expenses.

Application for a mandamus against the comptroller of the city of New York.

The facts of the case are fully stated in our report of the previous proceedings on mandamus against the board of supervisors. (11 *Ante*, 114.)

*J. T. Brady, J. W. Edmonds*, and *Mr. Fullerton*, for the relators.

*A. R. Lawrence* and *H. H. Anderson*, for the comptroller.

SUTHERLAND, J.—I shall at present merely state the conclusions at which I have arrived in this matter, without stating the grounds or reasons for such conclusions at large. These conclusions are as follows:

I. The judicial determination mentioned in the 6th section of the act of April 17, 1860,—which judicial determination, it may be conceded, is to be had or made before the comptroller is authorized to pay to the relators any part or portion whatever of the amount which the supervisors by that section are directed to raise and collect, or which they have caused to be raised and collected for the purpose mentioned in the section,—can properly be had or made in this proceeding for a mandamus.

The comptroller is not required to pay, nor can the mandamus issue, until the judicial determination shall have been had; but the demand of payment by the relators, and the refusal of the comptroller to pay, on the ground that there had been no such judicial determination, properly and necessarily, under the provisions of the section, calls for such judicial determination in deciding this motion or proceeding for a mandamus requiring the comptroller to pay.

It was not required of the relators that they should have or procure this judicial determination, in an independent action or proceeding against the board of supervisors or other body or person, before making the demand of the comptroller, or before instituting this proceeding for a mandamus on his refusal to pay.

II. The judicial determination so to be had or made in this matter or proceeding before a mandamus can issue to the comptroller directing him to pay, should be a judicial determination not only of the amount due to the relators as contractors with the commissioners of records for work actually done under their contract according to the contract price, assuming the act of 1855, authorizing and appointing the commissioners of records, to be constitutional, which amount can be ascertained by the usual order of reference, but a judicial determination also of the constitutional questions and objections raised and urged in this matter in behalf of the comptroller, unless the mandamus should and must issue notwithstanding a decision of such constitutional questions or points in his favor.

III. It does not follow, conceding the act of April 13, 1855, appointing or organizing the commissioners of records, for the reasons urged on the part of the comptroller, to be unconstitutional, and the contracts made under it by and with the commissioners to be void as to the commissioners, or even as to the city of New York, that the 6th section of the act of 1860 is therefore null and void.

If the Legislature had no constitutional right or power to name or appoint the commissioners by the act of 1855 itself; or if the act was, and was intended to be, an evasion of the constitutional provisions intended to secure cities and counties, &c., the election or appointment of their own officers; yet as in fact the commissioners of records were named in or appointed by the act of 1855, and did in fact organize and make contracts under it, and as it does not appear that either the attorney-general, or the city of New York, or any officer or officers elected by the electors or appointed by the authorities of the city or county of New York, had ever by any direct proceeding attempted to remove such commissioners, or questioned the constitutionality of their appointment, I think the Legislature might constitutionally direct the payment of the amount

due to the relators and others for services actually performed under their contracts with the commissioners, and cause a sufficient sum for such payment to be raised by tax on the estates and property of and within the city and county of New York, conceding the act of 1855, appointing the commissioners, to be unconstitutional, and the contracts made under it void, so that neither the commissioners or the city of New York could enforce them.

I am free to say, that the view now expressed as to the immateriality of the constitutional questions in making the judicial determination called for by section 6 of the act of 1860, may be considered as somewhat inconsistent with the views expressed by me recently on the application for a mandamus to the board of supervisors; but the view now taken and expressed as to the construction of section 6 of the act of 1860, was first suggested at the general term on the argument of the appeal from my order granting the mandamus to the board of supervisors; when, also, my attention was first called to the case of Town of Guilford *a.* Supervisors of Chenango County. (3 *Kern.*, 143.)

IV. If the foregoing conclusions are correct, it follows: 1st. That it is not necessary or proper on this application to decide the constitutional questions and objections raised and urged on the part of the comptroller in this matter. 2d. That there should be a reference to some suitable person as referee, to ascertain and report whether the amount claimed by the relators, and demanded of the comptroller, is actually due and owing to them, for services actually performed under a contract or contracts made with the commissioners, as stated in the papers on which they apply for the mandamus; or to ascertain and report the sum or amount which is so due and owing to them; and to take and state an account of the amount or sum (if any) which may be found to be so due and owing; and to report the same with the proofs taken by the referee. 3d. That on the coming in of such reports and proofs, a determination must be made by the court of the amount (if any) so actually due and owing to the relators, by the confirmation or modification of such report, or otherwise; and that thereupon a mandamus must issue to the comptroller to pay to the relators the amount so judicially determined to be due to them; such

amount, however, not to exceed the amount heretofore demanded by them of the comptroller.

V. The Hon. Benjamin W. Bonney is named as such referee, and the order of reference is to be settled on one day's notice.

---

## THE NEW YORK ICE COMPANY *a.* THE NORTH-WESTERN INSURANCE COMPANY.

*Supreme Court, First District; Special Term, January,* 1861.

MOTION TO COMPEL AMENDMENT OF PLEADING.—RULE 50.—
EXCUSE FOR DELAY.

A motion to strike out matter from a pleading cannot be made unless notice thereof is served within twenty days after service of the pleading.
This rule applied in a peculiar case where the moving party sought to excuse his delay on the ground that he had been misled.

Motion to strike out parts of a complaint.

The facts are stated in the opinion.

BARNARD, J.—This is a motion to strike out parts of a complaint as irrelevant and unnecessary.

The preliminary objection that the notice of motion was not served within twenty days after service of the complaint is made. Defendants say they have been misled by the plaintiffs, and that therefore the case does not come within the provisions of Rule 50.

To understand this claim of defendants, a *résumé* of the proceedings had in this and another cause will be necessary.

The plaintiffs commenced an action, by the complaint in which they prayed to recover, on a policy of insurance issued by defendants, for a loss alleged to have been insured against; and if it should be found necessary to reform the policy in order to enable them to recover thereon, then that the policy should be